1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RUBEN PAZ GOMEZ,

                Petitioner,

      v.

YANISLEIDY REYES GONZALEZ,

                Respondent.

CASE NO. C24-5645-KKE

ORDER GRANTING IN PART AND
DENYING IN PART PETITIONER'S
MOTION FOR FEES AND EXPENSES

On March 17, 2025, the Court granted the petition for return of minor child ACPR to Mexico under the International Child Abduction Remedies Act ("ICARA") and the Hague Convention on the Civil Aspects of International Child Abduction (the "Convention").  Dkt. No. 71.  Petitioner now seeks to recover $28,638 in attorney's fees (Dkt. No. 76) and $3,188.40 in expenses (Dkt. No. 74) from Respondent.  The Court finds only a portion of the requested amount is appropriate based on Respondent's financial status and grants the motion in part, ordering Respondent to pay $5,154.80 to Petitioner's counsel.

## I.    RELEVANT BACKGROUND

Petitioner, through counsel, filed his initial petition seeking return of minor child ACPR on August 6, 2024.  Dkt. No. 1.  After several missteps in attempting to file and serve a petition and declaration that complied with the local rules (Dkt. Nos. 5, 7, 10, 11, 13, 16), Petitioner finally filed a properly redacted petition on September 5, 2024 (Dkt. No. 12) and a properly redacted

declaration on September 10, 2024 (Dkt. No. 17[1]).  On September 25, 2024, Respondent filed a response opposing the petition and asserting various affirmative defenses under Article 13(b) of the Convention.  Dkt. No. 22.

After appointing counsel for Respondent (Dkt. No. 27) and issuing a case schedule for a three-day evidentiary hearing (Dkt. No. 38), upon request of the parties, the Court referred the case to Magistrate Judge Michelle Peterson for a settlement conference.  Dkt. No. 32.  Neither party timely submitted the required confidential settlement letter to Judge Peterson.  Dkt. No. 42.  The settlement conference nonetheless went forward as scheduled on January 7, 2025, but was unsuccessful.  Dkt. No. 43.

Though the Court had originally ordered that the evidentiary hearing be held remotely to facilitate Petitioner's participation from Mexico, the parties requested that the Court conduct the evidentiary hearing in-person in the Seattle courthouse.  Dkt. No. 40.  The Court granted this request (Dkt. No. 41) and held a three- and one-half day evidentiary hearing from February 10–13, 2025.  Dkt. Nos. 52, 55, 57, 58.

On March 17, 2025, the Court granted the petition.  Dkt. No. 71.  The Court determined that Petitioner had established a prima facie case for return of the child, including that Mexico was the child's habitual residence before removal.  *Id.* at 7–10.  The Court then analyzed whether Respondent had shown by clear and convincing evidence that "there is a grave risk that [the child's] return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation."  *Id.* at 11 (citing 22 U.S.C. § 9003(e)(2)).  The Court found the following facts were established by credible evidence:

---

[1] This declaration was later sealed by agreement of the parties and the Court.  Dkt. No. 53.

ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S MOTION FOR FEES AND EXPENSES - 2

- "At some point Petitioner took Respondent and ACPR's passport and identification cards, though the record is unclear as to how long these documents were retained. Respondent received these documents back after they were expired."

- "While the parties lived together in Mexico, Petitioner sexually assaulted Respondent. While Respondent was sharing a room and bed with ACPR, Petitioner would enter the room at night and have sex with Respondent without her consent. Respondent credibly testified that this happened on more than one occasion."

- "Petitioner also took Respondent's phone from her for an unspecified period while she was in Mexico."

*Id.* at 3–4 (internal citations omitted).

The Court determined that "Petitioner sexually abused [Respondent] in the presence of the child" and "exerted coercive control over Respondent's identity documents and phone at some point between March 2020 and April 2023." Dkt. No. 71 at 13. The Court went on to find these "deeply troubling facts" were "credible and disturbing," but that "there is no evidence that the abuse present during the parties' relationship continued after April 2023 when the parties no longer lived together." *Id.* Ultimately, the Court held Respondent failed to show by clear and convincing evidence that the child would face a grave risk of harm "based on the abuse of Respondent." *Id.* at 14. The Court ordered ACPR returned to Mexico by April 30, 2025, with Respondent responsible for all costs of said return. Dkt. No. 73.

The Court ordered Petitioner to submit briefing on his request for attorney's fees and costs (Dkt. No. 71 at 15), which he did (Dkt. No. 75). Respondent responded. Dkt. No. 77. The matter is ripe for the Court's consideration.

## II.   ANALYSIS

### A.   Legal Standard

Under ICARA, the statute implementing the Convention in the United States:

[a]ny court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other

care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.

22 U.S.C. § 9007(b)(3). The purposes of awarding fees and costs under § 9007(b)(3) "are to restore the applicant to the financial position he or she would have been in had there been no removal or retention, as well as to deter [violations of the Convention] from happening in the first place." Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10494-01 (Mar. 26, 1986); *see Adkins v. Adkins*, No. 19-cv-05535-HSG, 2020 WL 6508616, at *1 (N.D. Cal. Nov. 5, 2020). It is Respondent's burden to show any award of fees or expenses is "clearly inappropriate." 22 U.S.C. § 9007(b)(3). The Court has discretion to reduce the amount requested to make an appropriate award. *Castang v. Kim*, No. 24-12185, 2024 WL 3949445, at *2 (11th Cir. Aug. 27, 2024) (citing *Whallon v. Lynn*, 356 F.3d 138, 139 (1st Cir. 2004)); *Rydder v. Rydder*, 49 F.3d 369, 373–74 (8th Cir. 1995)).

The Court analyzes Petitioner's requested attorney's fees and out-of-pocket expenses separately, first determining whether the requested amounts are necessary and then whether the amounts are "clearly inappropriate."

**B.    The Court Awards Petitioner $5,154.80 in Attorney's Fees.**

Petitioner's counsel, Ms. Andrekita Silva, submitted a declaration in support of Petitioner's request for $28,638 for her attorney's fees. Dkt. No. 76. Ms. Silva attached to her declaration her legal services agreement with Petitioner (*id.* at 5–8), proof of two deposits from Petitioner totaling $7,617 (*id.* at 10–13), and billing records from July 24, 2024 through March 26, 2025 (*id.* at 14–19).

1.    <u>$25,774.20 of Petition's attorney's fees were reasonable and necessary.</u>

"Although ICARA creates a rebuttable presumption in favor of awarding Petitioner her attorneys' fees, Petitioner must still demonstrate that the requested fees were necessarily incurred

and that they are reasonable." *Rosasen v. Rosasen*, No. CV 19-10742-JFW(AFMx), 2020 WL 4353679, at *1 (C.D. Cal. June 5, 2020). To determine whether the fees sought are reasonable, the Court first calculates the "lodestar figure" by multiplying "the number of hours reasonably expended on the litigation [] by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Ferland v. Conrad Credit Corp*., 244 F.3d 1145, 1149 n.4 (9th Cir. 2001).

Ms. Silva's hourly rate of $180 is not challenged by Respondent and is reasonable based on the Court's familiarity with prevailing rates in the community. *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (holding "judges are justified in relying on their own knowledge of customary rates and their experience concerning reasonable and proper fees").

Ms. Silva billed 159.1 hours on this case. Dkt. No. 76 at 2, 19. This amount of time is not excessive, and the billing records show Ms. Silva reduced her billed amounts at certain times, likely due to the administrative or other non-billable nature of the task. *See, e.g.*, *id.* at 14 ("Review email note from R. Paz, Second letter to R. Paz .8= NC .4= .4"). However, due to the vagueness of most of Ms. Silva's time entries, and the fact that Ms. Silva's repeated failure to follow court orders and the local and federal civil rules led to unnecessary work (*see* Dkt. Nos. 11, 16, 42), the Court finds a 10% cut to Ms. Silva's billed hours is necessary and appropriate. Though Respondent seeks a 30% reduction in time billed due to "block billing," (Dkt. No. 77 at 6–7) the Court does not find that any further adjustment is necessary.

Accordingly, the Court finds Petitioner incurred reasonable and necessary attorney's fees for 143.19 hours at $180 per hour, totaling $25,774.20.

2. <u>The Court will order Respondent to pay $5,154.80 to Petitioner's counsel based on her limited financial resources.</u>

Once a petitioner establishes the attorney's fees requested were necessarily incurred, the Court determines whether the respondent has established the amount is "clearly inappropriate." Courts in this district and nationwide have found evidence of respondent's limited financial resources sufficient to reduce or deny an award of attorney's fees. *See, e.g.*, *Rehder v. Rehder*, No. C14-1242RAJ, 2015 WL 4624030, at *4 (W.D. Wash. Aug. 3, 2015) (declining to award attorney's fees based on respondent's financial circumstances and other factors); *Rydder*, 49 F.3d at 373–74 (reducing an ICARA award to a "more equitable" amount in light of the respondent's "strained financial circumstances"); *Aguilera v. De Lara*, No. CV-14-01209-PHX-DGC, 2014 WL 4204947, at *2 (D. Ariz. Aug. 25, 2014) ("The Court will not award attorneys' fees in this case. Respondent has little ability to pay such fees and remains responsible for the care of I.R."); *Pliego v. Hayes*, No. 5:15-CV-00146-TBR, 2017 WL 4322445, at *4 (W.D. Ky. Sept. 28, 2017) (reducing attorney's fee award by 75% based on respondent's inability to pay); *Mendoza v. Silva*, 987 F. Supp. 2d 910, 916–17 (N.D. Iowa 2014) (collecting cases).

Respondent presented evidence that her "year-to-date income through April 22, 2025, pre-tax, is $6,791.22." Dkt. No. 78 ¶ 2. During the hearing, Respondent also testified about her financial instability. *See* Dkt. No. 83 at 32–33, 40. Though Respondent was previously employed at McDonald's in the United States (Dkt. No. 78 ¶ 2), she has now returned to Mexico with the child, where her employment prospects are unknown.

Accordingly, the Court finds it necessary to reduce the attorney's fees request by 80%. The reduction here is proportionate to Respondent's inability to pay and thus will "still deter future violation of the Convention and comport[] with the purpose of ICARA." *Grano v. Martin*, No. 19-CV-6970 (CS), 2021 WL 3500164, at *10 (S.D.N.Y. Aug. 9, 2021).

Respondent shall pay $5,154.80 in attorney's fees to Petitioner's counsel.

**C.    Petitioner Is Not Entitled to an Award of Expenses.**

In addition to requesting his attorney's fees, Petitioner seeks to recover the following amounts allegedly necessarily incurred for this case:

- Certified translations: $300

- Transcripts: $543

- Flights, accommodations, food, and ground transportation for hearing: $2,227

- "Certification and sending of sentencing documents and return order": $118

- Already paid attorney's fees: $7,617

Dkt. No. 74 at 6. The Court first determines whether Petitioner has shown these expenses were necessary, and then analyzes whether any necessary expenses should be paid by Respondent.

The only necessary expenses incurred by Petitioner are the costs of certified translations and transcripts. In contrast, Petitioner's costs incurred in attending the February hearing were not necessary as the Court initially ordered the hearing to be conducted remotely in order to save the parties' travel costs. *See* Dkt. Nos. 38 (setting remote hearing), 40 (stipulation for an in-person evidentiary hearing). Thus, Petitioner voluntarily incurred the $2,227 in costs to attend the hearing in person. Next, Petitioner's request for "[c]ertification and sending of sentencing documents and return order" is not explained. Dkt. No. 74 at 6. The Court cannot find that this $118 was a necessary expense. Lastly, the Court has already addressed Petitioner's request for attorney's fees. *See supra* Section II(B). Totaling the translation and transcript costs, Petitioner incurred $843 of necessary expenses in pursuing this action.

As with the attorney's fees award, the Court finds it clearly inappropriate to award Petitioner the $843 in necessary expenses due to Respondent's inability to pay. *See supra* Section II(B)(2); Dkt. No. 71 at 3–4. The Court also finds an award of any expenses clearly inappropriate

based on the Court's finding that Petitioner committed various acts of domestic violence against Respondent. District courts consistently find that intimate partner violence is a relevant consideration when awarding expenses or fees under ICARA. *See, e.g.*, *Asumadu v. Baffoe*, No. CV-18-01418-PHX-DLR, 2019 WL 1531793, at *1 (D. Ariz. Apr. 9, 2019) ("[A]warding expenses is clearly inappropriate where the prevailing petitioner physically abused the respondent[.]"); *Jimenéz Blancarte v. Ponce Santamaria*, No. 19-13189, 2020 WL 428357, at *2–3 (E.D. Mich. Jan. 28, 2020) (finding history of domestic violence led to fees being clearly inappropriate).

Accordingly, the Court denies Petitioner's request for Respondent to pay his expenses.

### III.  CONCLUSION

For these reasons, the Court GRANTS IN PART and DENIES IN PART Petitioner's motion for attorney's fees and expenses.

Respondent shall pay $5,154.80 to Petitioner's counsel[2] by August 1, 2025.

Dated this 12th day of June, 2025.

Kymberly K. Evanson
United States District Judge

---

[2] Given the history of violence between the parties, the Court orders that Respondent shall pay the attorney's fee award directly to Petitioner's counsel. The Court intends that this order does not create any direct financial obligation between Respondent and Petitioner.